**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESUS ALCAZAR,

*Plaintiff,*

and

CESAR ROSAS,

*Plaintiff-Appellant,*

v.

THE CORPORATION OF THE CATHOLIC
ARCHBISHOP OF SEATTLE; and
FATHER HORATIO YANEZ,

*Defendants-Appellees.*

No. 09-35003

D.C. No.
CV-06-00281-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted En Banc
September 22, 2010—San Francisco, California

Filed December 10, 2010

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
Robert R. Beezer, Diarmuid F. O'Scannlain, Susan P. Graber,
Raymond C. Fisher, Ronald M. Gould, Richard C. Tallman,
Carlos T. Bea, Milan D. Smith, Jr., and N. Randy Smith,
Circuit Judges.

Opinion by Judge Graber

19731

**COUNSEL**

Eric Schnapper, University of Washington School of Law, Seattle, Washington; and Lindsay Halm, Schroeter, Goldmark & Bender, Seattle, Washington, for the plaintiff-appellant.

Michael A. Patterson and Karen A. Kalzer, Patterson Buchanan Fobes Leitch & Kalzer, Inc., P.S., Seattle, Wash-

ington; and M. Colleen Kinerk, Cable, Langenbach, Kinerk & Bauer, LLP, Seattle, Washington, for the defendants-appellees.

Allen Ruby, Law Offices of Allen Ruby, San Jose, California; Eric C. Rassbach, The Becket Fund for Religious Liberty, Washington, D.C.; and Kathryn Darnell, Metzger Law Group, PLC, Long Beach, California, for the amici curiae.

---

## OPINION

GRABER, Circuit Judge:

Churches, like all other institutions, must adhere to state and federal employment laws. But the federal courts have recognized a "ministerial exception" to that general rule. The exception exempts a church's employment relationship with its "ministers" from the application of some employment statutes, even though the statutes by their literal terms would apply. A key inquiry, therefore, is whether an employee is a "minister" for purposes of the exception. Where, as here, the plaintiff alleges that he "entered the seminary to become a Catholic priest" and performed his duties "in a ministerial placement," "[a]s part of [his] preparation for ordination into the priesthood," we hold that he is a "minister" for purposes of the ministerial exception.

Plaintiff Cesar Rosas appeals from the district court's grant of judgment on the pleadings to Defendants Corporation of the Catholic Archbishop of Seattle and Father Horatio Yanez on Rosas' overtime claim brought under Washington's Minimum Wage Act and from the court's subsequent decision denying him leave to amend the complaint to add a minimum wage claim. In *Rosas v. Corporation of Catholic Archbishop of Seattle*, 598 F.3d 668 (9th Cir. 2010), a three-judge panel affirmed. Among other things, the panel's opinion announced

a new test for determining whether a person is a "minister" for purposes of the ministerial exception. *Id.* at 674-77. We vacated that opinion and granted rehearing en banc, 617 F.3d 1101 (9th Cir. 2010) (order). On rehearing, we need not and do not adopt a general test for determining whether a person is a "minister" because, on the facts as alleged, Rosas is a minister under any reasonable interpretation of the exception. We therefore vacate Part IV-C of the panel's opinion, which announced a new test. We adopt that opinion in all other respects, including its holding that the exception applies to the minimum-wage claim at issue.[1]

[1] The Fifth Circuit first recognized the ministerial exception nearly 40 years ago. *McClure v. Salvation Army*, 460 F.2d 553, 558-61 (5th Cir. 1972). It is now "well entrenched" in the federal courts of appeals. *See Rweyemamu v. Cote*, 520 F.3d 198, 206 (2d Cir. 2008) (collecting cases). As we have explained, the ministerial exception derives from both the Free Exercise and Establishment Clauses of the First Amendment. *Werft v. Desert Sw. Annual Conference of United Methodist Church*, 377 F.3d 1099, 1101 (9th Cir. 2004) (per curiam). "The Free Exercise Clause rationale for protecting a church's personnel decisions concerning its ministers is the necessity of allowing the church to choose its representatives using whatever criteria it deems relevant." *Bollard*, 196 F.3d at 947. "Indeed, the ministerial relationship lies so close to the heart of the church that it would offend the Free Exercise

---

[1]We need not revisit our case law concerning the kinds of employment decisions covered by the ministerial exception. *See, e.g.*, *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004) (holding that the ministerial exception partially foreclosed a sexual harassment suit); *Bollard v. Cal. Province of Soc'y of Jesus*, 196 F.3d 940 (9th Cir. 1999) (holding that the ministerial exception did not apply in a sexual harassment suit); *cf. Am. Friends Serv. Comm. Corp. v. Thornburgh*, 961 F.2d 1405 (9th Cir. 1992) (holding that the application of the employer sanctions provisions of the Immigration Reform and Control Act of 1986 to a Quaker organization did not violate the First Amendment). If the ministerial exception applies here, Rosas' claim for additional wages fails.

Clause simply to require the church to articulate a religious justification for its personnel decisions." *Id.* at 946. Similarly, "applying [a] statute to the clergy-church employment relationship creates a constitutionally impermissible entanglement with religion [in violation of the Establishment Clause] if the church's freedom to choose its ministers is at stake." *Id.* at 948-49.

The paradigmatic application of the ministerial exception is to the employment of an ordained minister which, in cases involving Roman Catholicism, would include priests. *See, e.g.*, *Minker v. Balt. Annual Conference of United Methodist Church*, 894 F.2d 1354, 1358 (D.C. Cir. 1990) (holding that an ordained Methodist minister "is clearly a minister" for purposes of the exception). But the ministerial exception encompasses more than a church's ordained ministers. *See, e.g.*, *Starkman v. Evans*, 198 F.3d 173, 176 (5th Cir. 1999); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 461 (D.C. Cir. 1996). Federal courts have grappled with determining whether a particular church employee, though not ordained, nevertheless should be considered a "minister" for purposes of the ministerial exception. *See, e.g.*, *Starkman*, 198 F.3d at 175-77 (choir director); *Catholic Univ.*, 83 F.3d at 463 (Catholic nun); *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985) ("associate in pastoral care").

The circuit courts have not adopted a uniform general test for making that determination. Some courts utilize the "primary duties" test, which asks whether the employee's primary duties are religious in nature. *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1243-44 (10th Cir. 2010); *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 778 (6th Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3286 (U.S. Oct. 22, 2010) (No. 10-553); *Catholic Univ.*, 83 F.3d at 463; *Rayburn*, 772 F.2d at 1168-69. Others appear to use a version of the "primary duties" test, though without expressly adopting it. *Petruska v. Gannon Univ.*, 462 F.3d 294, 304 n.6, 306-07 & n.10 (3d Cir. 2006);

*Scharon v. St. Luke's Episcopal Presbyterian Hosps.*, 929 F.2d 360, 362-63 (8th Cir. 1991). At least one court has opted for a multi-factor test. *Starkman*, 198 F.3d at 175-77; *see also Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1039-41 (7th Cir. 2006) (discussing several factors).

**[2]** For our part, we have declined to adopt any particular test. In *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272 (9th Cir. 1982), we analogized to the Fifth Circuit's case law elaborating on *McClure* to conclude that a secretary was insufficiently like a minister to trigger the exception. *See id.* at 1277-78 (citing *EEOC v. Sw. Baptist Theological Seminary*, 651 F.2d 277, 283-85 (5th Cir. 1981); *EEOC v. Miss. Coll.*, 626 F.2d 477, 484 (5th Cir. 1980)). The secretary's role did not "go to the heart of the church's function in the manner of a minister or a seminary teacher," and her employment was not "the type of critically sensitive position within the church that *McClure* sought to protect." *Id.* at 1278. Accordingly, we stated that "[t]he facts of the present case do not require this court to examine in depth the scope of the [ministerial] exemption." *Id.*; *see also EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1369 (9th Cir. 1986) (applying *McClure* without announcing a general test).

**[3]** The parties and amici have suggested that we adopt a test of general applicability—either the test created by the three-judge panel, a test of their own creation, or one of the tests used by our sister circuits. We decline that invitation. We leave for another day the formulation of a general test because, under any reasonable construction of the ministerial exception, Rosas meets the definition of a minister.

**[4]** We hold that the First Amendment considerations relevant to an ordained minister apply equally to a person who, though not yet ordained, has entered into a church-recognized seminary program to become a minister and who brings suit concerning employment decisions arising from work as a seminarian. The principle of "allowing the church to choose

its representatives using whatever criteria it deems relevant," *Bollard*, 196 F.3d at 947, necessarily applies not only to those persons who already are ordained ministers, but also to those persons who are actively in the process of becoming ordained ministers. Similarly, we can no more ask the church for a religious justification for its decisions concerning seminarians (ordained ministers in training) than we can ask the church "to articulate a religious justification for its personnel decisions" concerning its ordained ministers. *Id.* at 946.

**[5]** Here, according to the complaint, Rosas "entered the seminary to become a Catholic priest in 1995 in Mexico" and, "[a]s part of [his] preparation for ordination into the priesthood, the Catholic Church required [him] to engage in a ministerial placement outside their diocese." For his ministerial placement, Rosas was "placed in St. Mary Parish in Marysville, Washington," where he "was hired to do maintenance of the church and also assisted with Mass." Because Rosas affirmatively alleges that he was a seminarian and seeks to challenge the church's wage payments concerning his work as a seminarian, we hold that Rosas is a "minister" for purposes of the ministerial exception.

Our holding today is limited. We do not address the extent of any ministerial exception concerning minors; at all relevant times, Rosas was an adult. Additionally, we agree with the courts that have held that, if a church labels a person a religious official as a mere "subterfuge" to avoid statutory obligations, the ministerial exception does not apply. *Tomic*, 442 F.3d at 1039. Here, there is no allegation or suggestion of bad faith or subterfuge.

Similarly, the ministerial exception may not apply to a seminarian who obtains employment with a church outside the scope of his seminary training. Here, Rosas challenges the church's wages for his duties as a seminarian. As part of his seminary training, he alleges, he was placed at St. Mary Parish where he performed duties such as maintenance and

assisting with mass. Fairly read, Rosas' complaint alleges that he performed those duties as part of his seminary training.

We acknowledge that it is theoretically possible to read the complaint as alleging that the church hired Rosas for maintenance purposes independent of his participation in the seminary program. Rosas alleges that he "was hired to do maintenance of the church and also assisted with Mass." One could read that allegation as follows: The church placed Rosas at St. Mary Parish to perform some seminarian duties, such as "assist[ing] with Mass," and that, in Rosas' spare time, he applied for a secular maintenance position at the church and "was hired to do maintenance of the church." Even if that theoretical possibility were sufficient to survive Defendants' motion to dismiss—a proposition that we doubt —other indicators suggest that such a strained reading is incorrect.

**[6]** After the district court held that the ministerial exception applied and dismissed the complaint, Rosas sought to file an amended complaint. With one exception, the proposed amendments did not alter any of the allegations concerning employment at St. Mary Parish as a part of the seminary training. The proposed amended complaint added a new sentence: After the original allegation that "[h]e was hired to do maintenance at the church and also assisted with mass," Rosas sought leave to add: "Plaintiff Rosas worked eight to nine hours a day, seven days a week and was paid $225 per week." The proposed amendment makes clear that Rosas' employment was not part seminarian, part secular—it was all part of his seminary training, for which he was paid a comprehensive weekly wage. That some of his duties may have encompassed secular activities is of no consequence. A church may well assign secular duties to an aspiring member of the clergy, either to promote a spiritual value (such as diligence, obedience, or compassion) or to promote its religious mission in some material way. The ministerial exception applies notwithstanding the assignment of some secular responsibilities.

**[7]** In conclusion, Rosas challenges the sufficiency of his wages for duties performed as part of his seminary training to become an ordained Roman Catholic priest. Because the ministerial exception applies to those claims, we affirm the district court's dismissal of the complaint.

**AFFIRMED.**